# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA

PEOPLES BANK SB,   )
    )
    Plaintiff,   )
    )
v.   )    CAUSE NO.: 2:16-CV-399-TLS
    )
RELIABLE FAST CASE LLC, d/b/a/ KCG,   )
    )
    Defendant.   )

## OPINION AND ORDER

Plaintiff Peoples Bank SB filed a Complaint [ECF No. 1] against Defendant Reliable Fast Cash asserting claims of conversion, implied bailment, and unjust enrichment. On November 1, 2017, the Defendant filed a Motion to Dismiss [ECF No. 21] for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Plaintiff responded [ECF No. 22] on November 15, 2017, and the Defendant replied [ECF No. 25] on November 22, 2017. This Motion is now fully briefed and ripe for review.

## BACKGROUND

The Plaintiff is an Indiana State Savings Bank and an Indiana corporation with its principal place of business in Munster, Indiana. The Defendant is a New York limited liability company. Non-party Portage Electric Supply Corporation ("Portage Electric") is an Indiana corporation with its principal place of business in Portage, Indiana. Between 2012 and 2016, the Plaintiff extended credit to Portage Electric in excess of $490,000 via various business loan agreements and promissory notes. Portage Electric executed a series of security agreements that granted the Plaintiff a security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric. (Compl. ¶ 8, ECF No. 1.) The

Plaintiff filed a UCC-1 Financing Statement, notifying the public that it held a properly perfected security interest in the following collateral:

> All of debtor's assets now owned and hereinafter acquired including, without limitation, all accounts, inventory, equipment, general intangibles, documents, investment property, instruments, chattel paper and accounts receivable (as those terms are defined in the Indiana Uniform Commercial Code in effect on the date of this filing, or as amended or revised from time to time).

(Compl. ¶ 10.)

The Plaintiff maintained a properly perfected, first-priority lien upon all of Portage Electric's accounts, assets, and accounts receivable. Unbeknownst to the Plaintiff, Portage Electric sold a percentage of its accounts receivable to the Defendant through a "Purchase and Sale of Future Receivables Agreement" in June 2015 ("Purchase Agreement"). Before entering into the Agreement, the Defendant allegedly performed an Indiana Uniform Commercial Code lien search, and the Plaintiff's lien was reported on that search. In October 2015, the Defendant began to debit Portage Electric's checking account on a regular basis as a means of collecting Portage Electric's accounts receivable and other collateral belonging to the Plaintiff.[1] The Plaintiff therefore asserts that the Defendant had actual knowledge of the Plaintiff's lien prior to entering into the Purchase Agreement. In the alternative, the Plaintiff asserts that the Defendant was grossly negligent in failing to perform a UCC lien search.

Portage Electric defaulted on its obligations to the Plaintiff. The Defendant collected $99,297.50 of Portage Electric's accounts receivable and assets in 2015, and $48,546.00 of Portage Electric's accounts receivable and assets in 2016. According to the Plaintiff, the Defendant "acted willfully and/or with such gross negligence to indicate a wanton disregard" of

---

[1] While the Complaint alleges that the Defendant's debits from the checking account occurred on a monthly basis, both parties assert in their briefs that the debits occurred daily. For the purpose of this motion, the Court finds the frequency of the debits to be irrelevant.

the Plaintiff's rights to Portage Electric's accounts receivable and funds collected therefrom. The Plaintiff therefore brought this case, asserting three tort claims against the Defendant in its Complaint: conversion, breach of implied bailment, and unjust enrichment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011) (citation omitted). "This means that the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief." *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632–33 (7th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678–79. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).

When reviewing a motion to dismiss, a court normally considers only the factual allegations of the complaint and any reasonable inferences that can be drawn from those allegations. *See Gessert v. United States,* 703 F.3d 1028, 1033 (7th Cir. 2013). A court may also

examine "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.,* 675 F.3d 743, 745 n.1 (7th Cir. 2012) (collecting cases); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). In ruling on a Rule 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In such a circumstance, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. The court has discretion to either consider matters outside the pleadings and construe a defendant's motion as a motion for summary judgment, or exclude those matters from consideration and proceed pursuant to Rule 12. *See Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998) (district court was within its discretion in choosing to handle the case as a motion to dismiss, rather than converting it to a motion for summary judgment).

## ANALYSIS

In support of its Motion to Dismiss, the Defendant attaches an Affidavit [ECF No. 21-1] executed by Mendy Chanin and the Purchase Agreement [ECF No. 21-2]. The Plaintiff, in support of its Response, attaches an Affidavit [ECF No. 22-1] executed by Daniel W. Moser. The Agreement is specifically referenced in the Complaint, and thus, the Court can consider it without converting the Motion to one for summary judgment. However, the parties' Affidavits were not attached or referred to in the Complaint, and neither party has argued that the Court should convert this Motion to Dismiss into one for summary judgment. The Court finds little to

4

be gained by converting the Defendant's Motion to a motion for summary judgment, and, as such, the Court will exclude the parties' Affidavits and proceed to consider the Motion pursuant to Rule 12(b)(6). *Cf. Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713 (7th Cir. 2013) (holding that the district court erred by considering affidavit because it was "not part of the pleadings" and "not 'referred to in the plaintiff[s'] complaint'" (quoting *188 LLC v. Trinity Indus. Inc*., 300 F.3d 730, 735 (7th Cir. 2002))).

While the Plaintiff's claims are common law cause of action, they are all based upon the theory that the Uniform Commercial Code ("UCC"), codified under Title 26 of the Indiana Code, barred the transfer of funds to the Defendant. The Defendant argues that the Plaintiff's theories of recovery fail as a matter of law because the UCC provides that a party may receive funds from a deposit account even if a third party holds a security interest in that account:

> A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account *unless the transferee acts in collusion with the debtor in violating the rights of the secured party*.

Ind. Code § 26-1-9.1-332(b) (emphasis added); *see also* Ind. Code. § 26-1-9.1-332 (notes from UCC comment) ("This section affords broad protection to transferees who take funds from a deposit account and to those who take money."). A "deposit account" is defined as "a demand, time, savings, passbook, or similar account maintained with a bank . . . ." Ind. Code § 26-1-9.1-102(29). The Defendant contends that because the checking account from which it deducted Portage Electric's funds was a "deposit account," the Defendant was able to retain Portage Electric's funds free of claims by the Plaintiff, absent any collusion between the Defendant and Portage Electric. The Defendant asserts that the Complaint fails to allege that the Defendant colluded or otherwise acted in concert with Portage Electric to wrongfully deprive the Plaintiff of its security interest in the checking account. *See Keybank Nat'l Ass'n v. Ruiz Food Prods., Inc.*,

No. CV 04-296, 2005 WL 2218441, at *7 (D. Idaho Sept. 9, 2005) ("[A]bsent a showing of collusion, an interest in not disturbing the finality of a completed transaction trumps the interest a secured creditor may have in tracing proceeds from secured inventory through a checking account into the hands of a supplier."); *Amegy Bank Nat. Ass'n v. DB Private Wealth Mortg., Ltd.*, No. 2:12-CV-243, 2014 WL 791503, at *7 (M.D. Fla. Feb. 24, 2014) ("[T]he moving party must show the transferee 'was affirmatively engaged in wrongful conduct.'") (quoting UCC § 8-503 cmt. 3)). Whether a party acted collusively is generally a question of fact reserved for a jury. *Amegy Bank*, 2014 WL 791503 at *8 (denying summary judgment on UCC § 9-332 affirmative defense).[2]

The Plaintiff does not deny that Indiana Code § 26-1-9.1-332(b) applies in the instant case, nor that it bears the burden of proving that the Defendant colluded with Portage Electric. The parties agree that to establish collusion, the UCC applies the Restatement of Torts (Second) § 876. *See Amegy Bank*, 2014 WL 791503 at *7 n.7; *In re Montagne,* 413 B.R. 148, 160 (Bankr. D. Vt. 2009). The Plaintiff relies on two out of the three alternative tests to demonstrate collusion identified by the Restatement: a party is subject to liability for acting in concert if (1) he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself" or (2) "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876.

While the Complaint does not specifically allege that the Defendant colluded with Portage Electric, the Plaintiff contends that its allegations are nevertheless sufficient under the

---

[2] The Court notes that the cases cited by Defendant address the issue of proving collusion at the summary judgment stage, rather than the sufficiency of complaint allegations. *See, e.g.*, *Amegy Bank*, 2014 WL 791503; *Keybank*, 2005 WL 2218441; *In re Montagne,* 413 B.R. 148 (Bankr. D. Vt. 2009).

notice pleading standard. The Court agrees. *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("[P]laintiffs in federal courts are not required to plead legal theories.") (citations omitted). As noted above, the Court must accept all well-pleaded facts as true, and resolve all reasonable inferences from those facts in the Plaintiff's favor to dispose of the instant Motion to Dismiss. *Pugh*, 521 F.3d at 692. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b).

The Complaint alleges that in 2012, the Plaintiff filed a UCC-1 financing statement, and thus has a superior interest, in Portage Electric's checking account and the proceeds of Portage Electric's accounts receivable in the checking account.[3] The Complaint further alleges that Portage Electric and the Defendant executed a "Purchase and Sale of Future Receivables Agreement" in 2015, whereby Portage Electric sold a percentage of its accounts receivable to the Defendant, which thereafter began to debit Portage Electric's checking account on a regular basis as a means of collecting Portage Electric's accounts receivable. It also alleges that the Defendant had actual knowledge of the Plaintiff's lien prior to entering into the Purchase Agreement with Portage Electric, and that the Defendant's continued control, dominion and ownership over Portage Electric's accounts receivable and proceeds was willful, unauthorized and wrongful. These allegations are sufficient to draw an inference that the Defendant knew that Portage Electric's conduct constituted a breach of duty and gave substantial assistance or encouragement to Portage Electric to so conduct itself, i.e., that the Defendant colluded or acted in concert with

---

[3] Plaintiff asserts that it has at all times held a properly perfected first priority interest in Portage's checking account and, therefore, the proceeds of the accounts receivable held in that account. "A security interest in a deposit account may be perfected only by control . . . ." Ind. Code § 26-1-9.1-312(b)(1). "A secured party has control of a deposit account if: (1) the secured party is the bank with which the deposit account is maintained." Ind. Code § 26-1-9.1-104(a). Such a secured party "has control, even if the debtor retains the right to direct the disposition of funds from the deposit account." Ind. Code § 26-1-9.1-104(b).

7

Portage Electric to deprive the Plaintiff of Portage Electric's collateral. *See* Restatement (Second) of Torts § 876.

The Defendant maintains that it had no reason to believe that receiving Portage Electric's funds constituted a breach of Portage Electric's duty because the checking account was available for use by Portage Electric, and the Plaintiff did not object to the Defendant depositing, or withdrawing for that matter, money into the account on a regular basis. The Defendant contends that because the Complaint alleges that the Plaintiff maintained Portage Electric's checking account, the Plaintiff was aware of the Defendant's debits from Portage Electric's checking account. At this stage of the litigation, the Court must consider the Complaint allegations, and inferences drawn therefrom, in the light most favorable to the Plaintiff. Therefore, the Court cannot draw the inference that the Plaintiff was aware of the Defendant's debits from Portage Electric's checking account as the Defendant urges.

The Defendant argues that Plaintiff "must prove collusion by establishing 'more than a defendant's knowledge of a superior interest.'" *Amegy Bank*, 2014 WL 791503, at *7 (quoting *Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.,* 409 F.3d 1049, 1056 (8th Cir. 2005)). The Defendant cites the Supreme Court's admonition that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality . . . [T]hey must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. The Defendant argues that the Plaintiff makes only conclusory statements that the Defendant conspired and colluded with Portage Electric without alleging any facts that would plausibly suggest conspiracy and collusion. But unlike *Twombly*'s allegations of parallel conduct, here the Complaint alleges that the Defendant and Portage Electric entered into a written agreement whereby the Defendant

knowingly debited Portage Electric's checking account as a means of collecting collateral in which the Plaintiff held a perfected security interest. The Court finds that the Complaint provides the Defendant with fair notice of what the claims are and the grounds upon which they rest and therefore defeats a Rule 12(b) motion to dismiss. Whether the Plaintiff can prove that the Defendant in fact colluded with Portage Electric is an issue for another day. *See Smith v. Lake Cty.*, No. 2:15-CV-123, 2017 WL 568590, at *7 (N.D. Ind. Feb. 13, 2017) ("[M]aybe when the record in this case is more developed Buncich will be able to establish that the Plaintiff's claim against him is not sustainable as a matter of law . . . [b]ut we are not there yet.").

The Defendant argues that the protection afforded under Indiana Code § 26-1-9.1-332(b) defeats the Plaintiff's state law claims of conversion, equitable bailment, and unjust enrichment. Because the Court has found that the Complaint adequately alleges collusion under § 26-1-9.1-332(b), the Plaintiff also adequately alleges that the Defendant is not entitled to this protection. Therefore, these arguments necessarily fail.

## CONCLUSION

Accordingly, the Court DENIES the Defendant's Motion to Dismiss [ECF No. 21].

SO ORDERED on July 31, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION