# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| PEOPLES BANK SB, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:16-cv-00399 |
| | ) | |
| RELIABLE FAST CASH LLC, d/b/a KCG, | ) ) | Hon. Theresa L. Springmann |
|     Defendant. | ) | Mag. Judge John E. Martin |

### Defendant's Answer and Affirmative Defenses

Now comes Defendant, RELIABLE FAST CASH LLC, by and through its attorney, Kurtz & Augenlicht LLP, in answer to Plaintiff's Complaint and raising affirmative defenses pursuant to Federal Rule of Civil Procedure 8(b)&(c) stating as follows:

### Parties

1.      Peoples is an Indiana State Savings Bank and an Indiana Corporation with its only principal place of business located in Munster, Indiana, County of Lake.

**Answer: Admit.**

2.      KCG is a New York limited liability company with its principal place of business located at 262A Albany Ave., Brooklyn, NY 11213. Upon information and belief, each and every one of KCG's members and managers are citizens of states other than Indiana.

**Answer: Admit.**

3.      Non-party Portage Electric Supply Corporation (hereinafter "Portage Electric") is an Indiana Corporation with a principal place a business located in Portage, Indiana, County of Lake.

**Answer: Defendant has insufficient information to admit or deny.**

### JURISDICTION & VENUE

4.      This Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. Section 1332(a)(1) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and this controversy is between citizens of different states.

**Answer: Admit.**

5. Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(b) (2) as a substantial part of the events or omissions giving rise to People's claims occurred within this district.

**Answer: Admit.**

## FACTS COMMON TO ALL COUNTS

6. Beginning in 2012 and extending through 2016, Peoples extended credit and monies to Portage Electric in an amount exceeding $490,000.00 via various Business Loan Agreements and Promissory Notes, copies of which are attached hereto and made a part hereof as collective Exhibit A.

**Answer: Defendant admits that Plaintiff extended credit and monies to Portage Electric in the time period described. Defendant lacks sufficient information to determine the amount of such loans.**

7. Portage Electric maintained a checking account at Peoples.

**Answer: Admit.**

8. As security for Peoples extension of credit and monies to Portage Electric, Portage Electric executed a Security Agreement on September 14, 2012, which granted Peoples a security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric, a true and correct copy of which is attached hereto and made a part hereof as Exhibit B.

**Answer: Admit.**

8. As security for Peoples extension of credit and monies to Portage Electric, Portage Electric executed a Security Agreement on September 14, 2012, which granted Peoples a security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric, a true and correct copy of which is attached hereto and made a part hereof as Exhibit B.

**Answer: Admit.**

9. In furtherance of the foregoing grant of security interest, Peoples filed a UCC-1 Financing Statement with the Indiana Secretary of State on September 18, 2012, a true and correct copies of which is attached hereto and made a part hereof as Exhibit C.

**Answer: Admit.**

10. The UCC-1 Financing Statement filed by People's was notice to the world that Peoples held a properly perfected security interest in the following collateral:

> All of debtor's assets now owned and hereinafter acquired including, without limitation, all accounts, inventory, equipment, general intangibles, documents, investment property, instruments, chattel paper and accounts receivable (as those terms are defined in the Indiana Uniform Commercial

>Code in effect on the date of this filing, or as amended or revised from time to time).

**Answer: Defendant admits that the financing statement contains the quoted language.**

11. Portage Electric executed another Security Agreement on December 1, 2013 which granted Peoples another security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric, a true and correct copies of which is attached hereto and made a part hereof as Exhibit D.

**Answer: Admit.**

12. Portage Electric executed another Security Agreement on October 1, 2015 which granted Peoples another security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric, a true and correct copies of which is attached hereto and made a part hereof as Exhibit E.

**Answer: Admit.**

13. Based upon the executed Security Agreements with Portage Electric and by virtue of the properly filed UCC-1 Financing Statement attached hereto as Exhibit C, Peoples has maintained a properly perfected first-priority lien upon all of Portage Electric's accounts, assets and accounts receivable from September 18, 2012 through the present date (hereinafter referred to as the "Lien").

**Answer: Paragraph 13 calls for a legal conclusion that Defendant cannot admit or deny.**

14. Unbeknownst to Peoples, in or about June, 2015, Portage Electric and KCG executed a "Purchase and Sale of Future Receivables Agreement" (hereinafter the "Agreement") whereby Portage Electric sold a percentage of its accounts receivable to KCG.

**Answer: Defendant admits that it entered into the above-described agreement.  Defendant denies that Plaintiff lacked knowledge of the arrangement.**

15. Beginning in October, 2015, KCG began to debit the checking account of Portage Electric on a monthly basis as a means of collecting Portage Electric's accounts receivable and other collateral belonging to Peoples.

**Answer: Defendant admits that it debited the Checking Account of Portage Electric.  Defendant states that such debits began in July of 2015 and that such debits took place multiple times per week.**

16. Upon information and belief, KCG performed an Indiana Uniform Commercial Code lien search prior to executing the Agreement with Portage Electric.

**Answer: Denied.**

17.     Peoples' Lien was reported on the Indiana Uniform Commercial Code lien search performed by KCG prior to entering into the Agreements with Portage Electric.

**Answer: Denied.**

18.     Upon information and belief, in addition to having constructive knowledge of Peoples' Lien pursuant to Peoples' UCC-1 filing, KCG had actual knowledge of Peoples' Lien prior to entering into the Agreements with Portage Electric.

**Answer: Denied.**

19.     In the alternative, if KCG entered into the Agreement with Portage Electric without performing an Indiana Uniform Commercial Code lien search, it was grossly negligent for failing to do so.

**Answer: Denied.**

20.     Portage Electric defaulted on its obligations to Peoples.

**Answer: Admit.**

21. KCG confiscated $99,297.50 of Portage Electric's accounts receivable and funds in 2015 directly from Portage Electric's bank account located at Peoples.

**Answer: Defendant admits that the funds were taken to repay funds advanced to Portage Electric by Defendant pursuant their agreement, denies that they were "confiscated."**

22.     KCG confiscated $48,546.00 of Portage Electric's accounts receivable and funds in 2016 directly from Portage Electric's bank account located at Peoples.

**Answer: Defendant admits that the funds were taken to repay funds advanced to Portage Electric by Defendant pursuant their agreement, denies that they were "confiscated."**

23.     KCG has unlawfully converted and absconded with liened collateral and assets available to satisfy Portage Electric's obligations to Peoples.

**Answer: Denied.**

### COUNT I – CONVERSION
24.     Peoples realleges and reasserts all previous paragraphs of this Complaint as if set forth fully herein.

**Answer: Paragraph 24 is not a statement of fact that Defendant can admit or deny.**

25.     KCG's continued control, dominion and ownership over Portage Electric's accounts receivable, collateral and monies collected therefrom is unauthorized and wrongful as Peoples maintained a superior interest in such collateral, money and accounts receivable by virtue of its Lien.

**Answer: Denied.**

26.     At all times Peoples maintained a superior interest in Portage Electric's accounts, accounts receivable and any and all proceeds collected therefrom.

**Answer: Denied.**

27.     Peoples has an absolute and unconditional right to the immediate possession of all Portage Electric's accounts, accounts receivable and the money collected therefrom.

**Answer: Denied.**

28.     Peoples made demand upon KCG for the return of the accounts, accounts receivable and all money collected therefrom; however, KCG has failed and/or refused to return them.

**Answer: Denied.**

29.     KCG acted willfully and/or with such gross negligence to indicate a wanton disregard of Peoples' rights to Portage Electric's accounts, accounts receivable and any funds collected therefrom.

**Answer: Denied.**

WHEREFORE, Defendant asks this Court to deny Plaintiff's prayer for relief in Count I.

## COUNT II - BREACH OF IMPLIED BAILMENT

30.     Peoples realleges and reasserts all previous paragraphs of this Complaint as if set forth fully herein.

**Answer: Paragraph 30 is not a statement of fact that Defendant can admit or deny.**

31.     KCG's dominion and control over Portage Electric's accounts and accounts receivable created an implied bailment relationship between Peoples as bailor and KCG as bailee.

**Answer: Denied.**

32.     KCG's possession of Portage Electric's accounts and accounts receivable and a minimum of $147,843.50 were held for Peoples' benefit and in trust pursuant to Peoples' Lien.

**Answer: Denied.**

33.     Peoples made demand upon KCG for the return of the accounts and accounts receivable and all money collected therefrom; however, KCG has failed and/or refused to return them.

**Answer: Denied.**

34.     KCG was not entitled to retain Portage Electric's accounts and accounts receivable and all money collected therefrom.

**Answer: Denied.**

WHERFORE, Defendant asks this Court to deny Plaintiff's prayer for relief in Count II.

## COUNT III - UNJUST ENRICHMENT

35.     Peoples realleges and reasserts all previous paragraphs of this Complaint as if set forth fully herein.

**Answer: Paragraph 35 is not a statement of fact that Defendant can admit or deny.**

36.     KCG was enriched by Portage Electric's accounts and accounts receivable, which were subject to the Lien of Peoples pursuant to valid security agreements.

**Answer: Admit.**

37.     KCG was obligated to return Portage Electric's accounts and accounts receivable and all monies collected therefrom to Peoples pursuant to Peoples' Lien.

**Answer: Denied.**

38.     Peoples has been impoverished by KCG's failure to return the foregoing accounts and accounts receivable and all monies collected therefrom.

**Answer: Denied.**

39.     In the alternative to the foregoing Counts, Peoples does not have a remedy provided by law to compel KCG to return the accounts and accounts receivable and the monies collected therefrom.

**Answer: Paragraph 39 is not a statement of fact that Defendant can admit or deny.**

40.     It would be inequitable for KCG to retain the benefit of Portage Electric's accounts and accounts receivable and the money collected therefrom.

**Answer: Denied.**

WHEREFORE, Defendant asks this Court to deny Plaintiff prayer for relief in Count III.

## Defendant's Affirmative Defenses

Defendant pleads the following Affirmative Defenses to Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 8(c):

## Affirmative Defense I — Indiana Code Section 26-1-9.1-332(b)

1. Indiana's codification of the Uniform Commercial Code and common law are applicable to this dispute.

2. The Checking Account is a "deposit account" as that term is defined by the Uniform Commercial Code, codified as Section 26-1-9.1-102(29) of the Indiana Code.

3. The Uniform Commercial Code, codified as Section 26-1-9.1-332(b) of the Indiana Code provides that transferees of funds from deposit accounts generally take those funds free and clear of any lien claim:

> Transferee of money; transferee of funds from deposit account. … (b) A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party.

4. Defendant at no point colluded or acted in concert with Portage Electric to deprive Plaintiff of its lien rights in the Checking Account.

5. Defendant was not aware that Portage Electric was breaching any duty or obligation to Plaintiff by entering into a commercial financing agreement with Defendant and allowing Defendant to be repaid by withdrawls from the Checking Account.

6. Defendant at no point intentionally aided or encouraged Portage Electric to violate the lien rights of Plaintiff in the Checking Account.

7. Defendant had no duty to Plaintiff refrain from receiving funds from the Checking Account.

8. Defendant's receipt of funds from the Checking Account of Portage Electric was not wrongful as to Plaintiff.

**WHEREFORE**, Defendant asks this Court to deny all relief sought in Plaintiff's Complaint.

## **Affirmative Defense II —  Waiver**

1. Defendant pleads Affirmative Defense II in the alternative of Affirmative Defense I.

2. From April of 2014 to July of 2015, at least three other lenders, non-parties to this suit (the "Non-Party Lenders"), entered into financing agreements with Portage Electric similar to the financing agreements with Defendant and loaned in excess of $240,000.00 to Portage Electric and deposited those loan funds directly into the Checking Account.

3. Each of the Non-Party Lenders was repaid by weekly withdrawls from the Checking Account in amounts in excess of the total funds each lender advanced.

4. Defendant entered into three separate commercial financing agreements with Portage Electric providing funding to Portage Electric in July of 2015, September of 2015 and February of 2016.

5. Pursuant to those agreements, Defendant deposited $35,000.00, $15,000.00 and $60,000.00, respectively, directly into the Checking Account.

6. Defendant was repaid for each of its cash advances to Portage Electric by near-daily withdrawls from the Checking Account in excess of the funds of advanced.

7. Plaintiff was aware of each deposit of funds into the Checking Account by Defendant or the Non-Party Lenders, at the time of such deposit, and the identity of the party depositing such funds.

8. Plaintiff was aware of each withdrawl from the Checking Account by Defendant or the Non-Party Lenders and the identity of the party making such withdrawl at the time such withdrawl was made or shortly thereafter.

9. Plaintiff knew or reasonably should have known that the deposits from Defendant and the Non-Party Lenders were part of commercial financing agreements with lenders that would be repaid out of assets of Portage Electric in violation of Plaintiff's lien rights.

10. Plaintiff knew or reasonably should have known that the withdrawls by Defendant and the Non-Party Lenders from the Checking Account were repayment to Defendant and the Non-Party Lenders in satisfaction of those commercial financing agreements.

11. Plaintiff knew or reasonably should have known that payments from the Checking Account to Defendant and the Non-Party Lenders violated Plaintiff's collateral rights in the Checking Account.

12. Plaintiff had the ability to freeze the Checking Account at any time and stop all payments to Defendant and the Non-Party Lenders.

13. Plaintiff permitted the deposit of funds from Defendant and the Non-Party Lenders and regular withdrawls from the Checking Account by Defendant and the Non-Party Lenders.

14. Plaintiff's actions in permitting the deposit of funds into the Checking Account by Defendant and the Non-Party Lenders is inconsistent with Plaintiff asserting its lien rights against the Checking Account against Defendant.

15.     Plaintiff's actions in permitting the withdrawl of funds from the Checking Account by Defendant and the Non-Party Lenders is inconsistent with Plaintiff asserting its lien rights against the Checking Account.

16.     As a result of Plaintiff's actions, Plaintiff has waived its rights to assert its lien rights against the Checking Account against Defendant.

17.     As a result of Plaintiff's actions, Defendant reasonably believed that its receipt of funds from the Checking Account was not wrongful as to Plaintiff.

18.     It would be fundamentally inequitable for Plaintiff to assert lien rights against the Checking Account in this instance.

**WHEREFORE,** Defendant asks that this Court deny all relief sought in Plaintiff's Complaint.

### **Affirmative Defense III —   Equitable Estoppel**

1.     Defendant pleads Affirmative Defense III in the alternative of Affirmative Defenses I.

2.     Defendant  incorporates by reference the allegations of Paragraphs 2-17 of Affirmative Defense II.

3.     Defendant had no knowledge that Plaintiff objected to commercial lenders such as itself lending money to Portage Electric or being repaid from funds in the Checking Account.

4.     Defendant relied upon Plaintiff's acquiescence to the commercial financing agreements Portage Electric entered into with the Non-Party Lenders and Plaintiff permitting the withdrawl of funds from the Checking Account by the Non-Party Lenders in Defendant's decision to loan money to Portage Electric.

5.     Defendant relied upon Plaintiff's acquiescence to Defendant providing funds to Portage Electric in July of 2015 and regular withdrawls from the Checking Account to satisfy the commercial financing agreement in making the decision to enter into similar agreements with Portage Electric in September of 2015 and February of 2016.

6.     Defendant's decision to loan funds to Portage Electric was a material change of Defendant's position made in reliance upon Plaintiff's actions and inactions.

7.     As a result of Plaintiff's actions and inactions, it would be fundamentally unequitable  to permit Plaintiff to assert its lien rights in the Checking Account.

**WHEREFORE**, Plaintiff asks that this Court deny all relief sought in Plaintiff's Complaint.

          Respectfully submitted,

          /s/ Robert J. Augenlicht, *attorney for Defendant*


Kurtz & Augenlicht LLP
123 W. Madison St.
Suite 700
Chicago, IL 60602
312.526.3928
ARDC #6299002